## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| JANICE HILL, | ) CASE NO. 4:25-CV-01681-JDA |
| | ) |
| Plaintiff, | ) MAGISTRATE JUDGE |
| | ) JENNIFER DOWDELL |
| v. | ) ARMSTRONG |
| | ) |
| FRANK BISIGNANO, | ) **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | ) **AND ORDER** |
| | ) |
| Defendant. | ) |
| | ) |

## I.    INTRODUCTION

Plaintiff Janice L. Hill ("Ms. Hill") seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 17). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## II.    PROCEDURAL HISTORY

On July 21, 2022, Ms. Hill filed her application for DIB, alleging an onset date of December 9, 2021. (Tr. 256). Ms. Hill's application related to her conversion disorder, fibromyalgia, anxiety, depression, asthma, post-traumatic stress disorder (PTSD), TIA, post-concussion syndrome, and hypothyroidism. (Tr. 307).

The Social Security Administration ("SSA") denied Ms. Hill's application initially and upon reconsideration. (Tr. 104-05). Ms. Hill requested a hearing before an administrative law judge ("ALJ"). (Tr. 140). The ALJ held a remote hearing on July 22, 2024, at which Ms. Hill was

1

represented by counsel. (Tr. 42). Ms. Hill testified, as did an independent vocational expert ("VE"). On September 10, 2024, the ALJ issued a written decision, finding that Ms. Hill was not disabled. (Tr. 14). The ALJ's decision became final on June 10, 2025, when the Appeals Council declined further review. (Tr. 1).

On August 12, 2025, Ms. Hill filed her Complaint in the United States District Court for the Southern District of Ohio, challenging the Commissioner's final decision. (ECF No. 1). Ms. Hill asserts the following assignment of error:

(1)     The ALJ did not adequately evaluate Plaintiff's need for a cane.

(ECF No. 16, PageID # 1494).

On August 12, 2025, Magistrate Judge Peter B. Silvain, Jr. of the Southern District of Ohio transferred the case to this court after finding that venue was proper in the Northern District of Ohio under 28 U.S.C. § 1391(b). (ECF No. 5). On December 16, 2025, the parties consented to this Court's jurisdiction. (ECF No. 17).

## III.     BACKGROUND[1]

### A.     Personal, Educational, and Vocational Experience

Ms. Hill was born in 1974 and was 49 years old on her date last insured. (Tr. 33, 256). She has an associate's degree. (Tr. 54). Ms. Hill is married and has two adult children. (Tr. 51-52, 257). She does not have any past relevant work. (Tr. 51).

### B.     Relevant Hearing Testimony

#### 1.     Ms. Hill's Testimony

Ms. Hill testified that she has problems with falls as a result of her conversion disorder and that she uses a cane to stop herself from falling. (Tr. 57-60). She testified that, without a cane, she

---

[1] The ALJ found that Ms. Hill suffered from both physical and mental impairments. In this proceeding, Ms. Hill challenges only the ALJ's evaluation of Ms. Hill's need for a cane. Accordingly, I will limit my discussion to evidence regarding that issue.

falls at least three times per week. (Tr. 58). She also testified that she has been experiencing falls for a couple of years and that the problem is getting worse. *Id*. Ms. Hill further testified that her conversion disorder causes problems with her gait and that her leg will freeze up or give out. (Tr. 60). Ms. Hill testified that she hit her head after a fall in January 2023 and received treatment at the hospital. *Id*.

### 2.       *Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Ms. Hill's age, education, and lack of past relevant work who could perform work at the light exertional level and could frequently stoop, kneel, or crouch; occasionally climb stairs or ramps; occasionally crawl; never climb ladders, ropes, scaffolds, or balance; occasionally be exposed to extreme cold or heat, wetness, humidity, noise, vibrations, fumes, dust, odors, gases, and poor ventilation; must avoid exposure to dangerous machinery and unprotected heights; could work with a moderate level of noise; could perform work that could be learned in 30 days or fewer; was limited to simple routine tasks, simple work-related decisions, and routine workplace changes; and could not perform work at a production-rate pace. (Tr. 63). The VE testified that the hypothetical individual could perform work existing in significant numbers in the national economy, including work as a counter clerk, routing clerk, small assembly, and packager. (Tr. 63-64). The VE further testified that the hypothetical individual could perform those jobs even if the individual needed a cane to ambulate. (Tr. 64).

### C.       **Relevant Opinion Evidence**

### 1.       *State Agency Medical Consultants*

On December 14, 2022, Laura Rosch, D.O., a state agency medical consultant, opined on initial review that Ms. Hill could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds but could never climb ladders, ropes, or scaffolds; frequently climb ramps or stairs; and

frequently crawl. (Tr. 98-99). Dr. Rosch further opined that Ms. Hill should avoid concentrated exposure to heat, cold, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, and poor ventilation, and that Ms. Hill should avoid all exposure to hazards, unprotected heights, and heavy machinery. (Tr. 99).

On June 28, 2023, Gerald Dzurik, M.D., opined on reconsideration that Ms. Hill could walk and sit and stand for six hours in an eight-hour workday. (Tr. 113). Dr. Dzurik also opined that Ms. Hill was "frequently off balance w/ falls" and that she displayed a "[h]esitant gait w/ use of cane for stability (not required for ambulation)." *Id*. Dr. Dzurik further opined that Ms. Hill could never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally crawl; and frequently balance, stoop, kneel, and crouch. (Tr. 113). Dr. Dzurik also opined that Ms. Hill should avoid all exposure to hazards, unprotected heights, and heavy machinery, but that she had no other environmental limitations. (Tr. 114). In the "additional explanation" portion of his opinion, Dr. Dzurik stated that he had made slight adjustments to the postural and environmental limitations given Ms. Hill's worsening imbalance. (Tr. 114).

The ALJ found that the opinions of the state agency medical consultants were only minimally or partially persuasive. (Tr. 32). The ALJ found that Dr. Rosch failed to include limitations for balancing, did not consider Ms. Hill's conversion disorder as a severe or nonsevere impairment, and did not include limitations based on Ms. Hill's migraines. *Id*. The ALJ also found that Dr. Dzurik's opinion was inconsistent in prohibiting heights and hazards while permitting frequent balancing and that the limitations he identified were only somewhat consistent with the evidence. *Id*. The ALJ did not directly address Dr. Dzurik's statement that Ms. Hill required a cane.

D.      **Relevant Medical Evidence**

On March 29, 2022, Ms. Hill presented to her primary care provider, complaining of left

4

ankle pain. (Tr. 507). Ms. Hill reported that she was unloading items at the dump when her son accidentally hit her left ankle. *Id*. On examination, she was positive for arthralgias and gait problems. *Id*. She had a normal range of motion with mild swelling and bruising. (Tr. 508). Her ankle was wrapped and she received an x-ray to rule out a fracture. *Id*. The x-ray revealed no evidence of a fracture, but did show a moderate size plantar calcaneal spur and mild scattered degenerative changes. (Tr. 510).

At a May 31, 2022 follow-up psych visit regarding her PTSD and conversion disorder, Ms. Hill complained of problems with coordination when walking. (Tr. 549).

Ms. Hill saw her primary care provider again on September 15, 2022, complaining of gastrointestinal problems and knee pain. (Tr. 826). She reported burning and aching in her left knee for two weeks, which was exacerbated by movement and weight bearing. *Id*. On examination, Ms. Hill displayed a normal range of motion with no swelling, deformity, effusion, or erythema. (Tr. 828).

On January 6, 2023, Ms. Hill went to the emergency room after she fell on her patio. (Tr. 743). Ms. Hill reported that she fell when she went down a step and felt pain in her ankle. *Id*. She denied losing consciousness, but said she had a severe headache, nausea, and lightheadedness. *Id*. She displayed normal muscle tone and strength. (Tr. 748). A CT scan of her head was normal, while a CT scan of her cervical spine showed moderate degenerative changes but no acute findings. (Tr. 749-50).

On February 8, 2023, Ms. Hill had a telehealth appointment with Julia Bucklan, D.O., complaining of migraines, concussion symptoms, cognitive decline, imbalance, falls, and neck pain. (Tr. 784). She reported that she fell and hit her head in 2017 after her ankle gave out. (Tr. 785). Ms. Hill also reported that she had experienced six falls in the previous six months. *Id*. It was noted that she had diagnoses of chronic migraine headache and post-concussive syndrome.

(Tr. 788). She was referred for physical therapy and neurocognitive testing. *Id*.

On March 13, 2023, Ms. Hill had a neurological consultation. (Tr. 889). She reported pain in her ankle and said that her ankle would give out on her. (Tr. 890). She also reported experiencing a few falls. *Id*. On examination, she displayed a hesitant gait and was not able to tandem walk. (Tr. 894). However, she was able to walk in a straight line without assistance. *Id*. She had normal muscle strength, reflexes, coordination, and gross motor control. *Id*. It was noted that there was no obvious explanation for Ms. Hill's symptoms. (Tr. 894).

Ms. Hill presented to the Cleveland Clinic on May 25, 2023 for a neuropsychological evaluation with Kamini Krishnan, Ph.D. (Tr. 1032). She reported experiencing cognitive changes after a head injury in 2017, and said that, while her condition had been improving, it worsened several months previously after she had a second head injury when her legs froze, causing her to fall. *Id*. Dr. Krishnan noted that Ms. Hill used a cane to assist her gait. (Tr. 1034). Dr. Krishnan expressed concerns about the validity of Ms. Hill's neuropsychological evaluation because some validity measures were well below normal and because Ms. Hill acknowledged difficulty engaging on tasks. *Id*. Dr. Krishnan stated that the results may underestimate her cognitive function. *Id*.

Ms. Hill presented to an orthopedic clinic on September 19, 2023, complaining of pain in her right ankle and left knee. (Tr. 1094). Ms. Hill reported that she fell a month prior and injured her right ankle. *Id*. She also reported that she had experienced knee pain for the past year. *Id*. On examination, her right ankle was tender and abnormal with stability to inversion. (Tr. 1095). X-rays were normal other than mild osteoarthritis. *Id*. She was diagnosed with a right ankle sprain, quadriceps tendonitis, and primary osteoarthritis of the left knee. (Tr. 1095-96).

The Commissioner notes that, at various visits with her primary care physician during the relevant period, Ms. Hill displayed a normal range of motion. (Tr. 478, 488, 492, 497, 504, 808). The Commissioner further notes that, on multiple occasions, Ms. Hill presented with a stable gait.

6

(Tr. 533, 544, 918, 930, 947).

## IV.     THE ALJ'S DECISION

The ALJ first determined that Ms. Hill last met the insured status requirements of the Social Security Act on September 30, 2023. (Tr. 19). The ALJ next determined that Ms. Hill had not engaged in substantial gainful activity between December 9, 2021, the alleged onset date, and her date last insured. *Id*. The ALJ further determined that Ms. Hill had the following severe impairments: chronic obstructive pulmonary disease (COPD), fibromyalgia, obesity, migraine headaches, conversion disorder, depression, anxiety, and post-traumatic stress disorder (PTSD). (Tr. 20). However, the ALJ also determined that none of Ms. Hill's severe impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I. *Id*.

The ALJ next determined that Ms. Hill had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except she can frequently stoop, kneel, or crouch. She can occasionally climb ramps and stairs, and crawl. She can never climb ladders, ropes, and scaffolds, or balance, as that term is used vocationally. Occasional exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, dusts, odors, gases, and poor ventilation. She must avoid all exposure to dangerous moving machinery and unprotected heights. Work with a moderate level of noise. With work that can be learned in 30 days or less, with simple routine tasks, simple work-related decisions, and routine workplace changes. No production rate pace work, such as on an assembly line or with hourly productivity goals.

(Tr. 25).

The ALJ further determined that Ms. Hill had no past relevant work. (Tr. 33). The ALJ determined, however, that jobs existed in significant numbers in the national economy that Ms. Hill could perform, including work as a counter clerk, routing clerk, small assembler, or packager. (Tr. 33-34). Accordingly, the ALJ found that Ms. Hill was not disabled. (Tr. 34).

V.    **LAW & ANALYSIS**

A.    <u>**Standard of Review**</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

### B. <u>Standard for Disability</u>

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 404.1520(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis

despite limitations from her impairments. 20 C.F.R. § 404.1520(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g) and 404.1560(c). *See Abbott*, 905 F.2d at 923.

### C. Analysis

In her sole assignment of error, Ms. Hill argues that the ALJ erred in formulating her RFC because the ALJ did not account for the fact that she needs to use a cane. Ms. Hill argues that several aspects of the RFC are inconsistent with use of a cane, that her testimony and the medical evidence supported the inclusion of a cane in the RFC, and that the ALJ also did not properly address Dr. Dzurik's opinion that Ms. Hill needs a cane for balance.

"A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019). The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which [the ALJ] is relying, and [the ALJ] may not ignore evidence that does not support [the ALJ's] decision, especially when that evidence, if accepted, would change [the ALJ's] analysis." *Golden*, 2018 WL 7079506 at *17 (quoting *Fleischer*, 774 F. Supp. 2d at 880). However, "[i]t is plaintiff's burden to prove the severity of her impairments, and to provide evidence establishing her RFC." *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-1849, 2021 WL 4987607, at *3 (N.D. Ohio Oct. 27, 2021).

If a "cane [is] not a necessary device for [a] claimant's use, it cannot be considered an exertional limitation that reduced her ability to work." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (July 2, 1996), addresses the need for an assistive device like a cane. It provides that, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id*. at *7.

Under SSR 96-9p, "clear medical evidence is required before the need for a cane may be incorporated into an RFC finding." *White v. Saul*, No. 1:20-cv-236, 2021 WL 1145463, at *7 (N.D. Ohio Mar. 25, 2021); *see also Duty v. Comm'r of Soc. Sec.*, No. 5:20-CV-2647, 2022 WL 1152783, at *4 (N.D. Ohio Apr. 19, 2022) ("To require that an ALJ include a cane in a claimant's RFC, a claimant must establish through medical evidence that a cane is a medical necessity."). "[I]ndications in the medical record that Plaintiff was using a cane [are] insufficient to establish that the cane was medically required." *Stupka v. Saul*, No. 1:19-cv-2305, 2021 WL 508298, at *3 (N.D. Ohio Feb. 11, 2021) (citation and quotations omitted). And, "[a]bsent medical documentation demonstrating the need and circumstances for which the cane was needed, the ALJ [is] not required to include the cane in [the ALJ's] RFC analysis." *Id*. at *4; *see also Duty*, 2022 WL 1152783, at *4 (holding that ALJ was not required to incorporate need for cane into RFC where medical records showed that plaintiff used cane but plaintiff did not cite "any medical records stating that he *required* a cane to ambulate").

Here, the ALJ acknowledged Ms. Hill's testimony that she uses a cane because she experiences falls. (Tr. 26). However, The ALJ also found that there were only two notations in the medical records of Ms. Hill using a cane to ambulate, and that one of those instances was at Ms.

11

Hill's neuropsychological evaluation, where the examiner had concerns about the test validity because some of the performance validity measures were well below normal. *Id*. The ALJ further noted that, at other times, Ms. Hill displayed a stable gait and normal range of motion. *Id*. Moreover, in at least one instance where Ms. Hill was observed to have an abnormal gait, there was no indication that she was using an assistive device. (Tr. 26-27). The ALJ also found that the record did not reflect that Ms. Hill continuously used an assistive device or that Ms. Hill ever received a prescription for one. (Tr. 28).

Substantial evidence supports the ALJ's conclusion. Ms. Hill does not identify any medical record prescribing a cane, let alone describing the circumstances under which she needs to use one. The mere fact that providers noted Ms. Hill's use of a cane on two occasions does not satisfy her burden under SSR 96-9p. *See Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 353 (6th Cir. 2020) (holding that medical records noting that plaintiff used a cane did not establish that plaintiff needed a cane where doctors did not describe cane as a medical necessity); *Jones v. Comm'r of Soc. Sec.*, 815 F. App'x 926, 931 (6th Cir. 2020) ("a single notation of 'cane' cannot possibly provide 'the circumstances for which [the assistive device] is needed'") (quoting SSR 96-9-p, 1996 WL 374185, at *7).

Ms. Hill also identifies several treatment records noting that she was experiencing falls or having problems with her gait. But "medical evidence that is simply consistent with the use of a cane is also insufficient" to establish that the cane was a medical necessity. *Stupka*, 2021 WL 508298, at *4. Ms. Hill additionally points to her own testimony that she needs a cane for balance and that she will fall three times per week without one. (Tr. 57-60). However, "[n]umerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, but found it unavailing when the record lacked supporting medical documentation demonstrating the requirement for such a device." *White*, 2021 WL 1145463, at *8 (citing cases).

12

Finally, Ms. Hill faults the ALJ for failing to acknowledge that Dr. Dzurik found that Ms. Hill needed a cane for stability and was frequently off balance with falls. (Tr. 113). It is true that the ALJ's discussion of Dr. Dzurik's opinion did not mention his statements regarding Ms. Hill's need for a cane. (Tr. 32). However, the ALJ found that Dr. Dzurik's opinion was only minimally or partially persuasive because it was internally inconsistent and only somewhat consistent with the evidence of record. *Id*. In addition, the ALJ found elsewhere in the decision that a cane was not a medical necessity because Ms. Hill lacked a prescription for a cane and records did not indicate that she consistently used one. (Tr. 28). Thus, while it would have been preferrable for the ALJ to expressly discuss Dr. Dzurik's opinion regarding Ms. Hill's need for an assistive device, substantial evidence supports the ALJ's conclusion. *See Ash v. Comm'r of Soc. Sec. Admin.*, No. 5:21-CV-00526-PAB, 2022 WL 18863848, at *21 (N.D. Ohio Dec. 28, 2022), *report and recommendation adopted sub nom.*, 2023 WL 2153853 (N.D. Ohio Feb. 22, 2023)  (holding that ALJ did not err in failing to include medical source's opinion that plaintiff needed a cane where ALJ found that opinion was inconsistent with the evidence); *Martincic v. Comm'r of Soc. Sec.*, No. 1:23-CV-628, 2024 WL 979801, at *3 (N.D. Ohio Mar. 7, 2024) (holding that ALJ did not err in rejecting medical source opinion that plaintiff needed a cane where ALJ provided good reasons for discounting opinion).

Even assuming that the ALJ did err in failing to incorporate Ms. Hill's need for a cane into the RFC, however, "an ALJ's error in . . . failing to include a use-of-a-cane limitation in the RFC . . . is harmless when the claimant cannot show that the ultimate determination – that there were a significant number of available jobs – would have been different had such a limitation been included." *Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2020 WL 9460505, at *14 (N.D. Ohio July 7, 2020), *report and recommendation adopted*, 2021 WL 1540389 (N.D. Ohio Apr. 19, 2021); *see also Borawski v. Comm'r of Soc. Sec.*, No. 1:20-cv-01091-JDG, 2021 WL 811717, at

13

*17 n.4 (N.D. Ohio Mar. 3, 2021) ("Even assuming, *arguendo*, the ALJ erred in omitting the use of a cane from the RFC, any such error is harmless as the VE testified that the need for a cane . . . would not preclude Borawski's past work as a medical laboratory technician."); *Brown v. Comm'r of Soc. Sec.*, No. 1:25-cv-1993, 2026 WL 828742, at *12 (N.D. Ohio Mar. 26, 2026), *report and recommendation adopted*, 2026 WL 1035637 (N.D. Ohio Apr. 16, 2026) (holding that any error in ALJ's finding that plaintiff needed a cane for walking rather than a rollator was harmless because VE testified that plaintiff could perform jobs in the national economy even if she required a rollator).

Here, the ALJ expressly asked the VE if Ms. Hill could perform the identified jobs as a counter clerk, routing clerk, small assembly, or packager if she required a cane to ambulate. (Tr. 58). The VE testified that Ms. Hill could still perform those jobs. *Id*. Ms. Hill did not challenge the VE's testimony at the hearing and has provided no basis to dispute it in this proceeding. Any error in excluding a cane from the RFC was therefore harmless.

## VI.    CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's final decision denying Ms. Hill's application for Social Security disability insurance benefits.

**IT IS SO ORDERED.**

Dated: June 29, 2026

*/s Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge